UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| RED LION HOTELS FRANCHISING, INC., | NO: 2:18-CV-0131-TOR |
|---|---|
| Plaintiff, | ORDER GRANTING DEFAULT JUDGMENT IN PART |
| v. | |
| CENTURY-OMAHA LAND, LLC., and EDWIN W. LESLIE, | |
| Defendants. | |

BEFORE THE COURT is Plaintiff Red Lion Hotels Franchising, Inc.'s Motion for Default Judgment (ECF No. 20) against Defendant Century-Omaha Land, LLC. After reviewing the Motion, the Court gave Plaintiff notice that additional information was needed before the Court could fulfill the request. Plaintiff has since submitted additional declarations supporting the amount requested (ECF Nos. 26; 27; 28; 29). Defendant Century-Omaha Land, LLC, has not appeared before the Court and has not filed an opposition to the Motion.

ORDER GRANTING DEFAULT JUDGMENT IN PART ~ 1

The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, the Motion for Default Judgment (ECF No. 20) is **granted in part**.

## DISCUSSION

Obtaining a default judgment under Federal Rule of Civil Procedure 55(b) is a two-step process. A party must first file a motion for entry of default, obtain a Clerk's Order of Default, and then file a separate motion for default judgment. *See* Local Rule 55.1. Federal Rule of Civil Procedure 55(b) provides that a plaintiff is entitled to default judgment by the clerk where the "claim is for a sum certain or a sum that can be made certain by computation" or by the Court in all other cases. When a party applies for default judgment with the Court, the Court "may conduct hearings or make referrals--preserving any federal statutory right to a jury trial-- when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55 (emphasis removed).

"Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (citing Fed. R. Civ. P. 55(b)(2)). "The general rule of law is that upon default the factual allegations of the complaint, except

those relating to the amount of damages, will be taken as true." *Id.* at 917-18 (citation omitted). The decision whether to enter default judgment is within the Court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citation omitted).

Here, the Court has subject matter jurisdiction both because a federal issue is involved and there is complete diversity because the parties are domiciled in different states and the matter exceeds $75,000. 28 U.S.C. §§ 1331, 1332. The Court has personal jurisdiction over Century-Omaha and venue is proper in the Eastern District of Washington because, pursuant to the underlying agreements, the parties submitted to the exclusive jurisdiction of the federal or state courts located in Spokane, Washington. *See* ECF No. 20 at 9; 22-1 at 17. Finally, the Clerk's Order of Default was entered June 13, 2018. *See* ECF No. 12. Plaintiff has thus completed the first step in seeking a default judgment.

Plaintiff now requests the Court award damages and attorney fees pursuant to the underlying franchise and financing agreements. ECF No. 20 at 2, 19. The details of the Agreements and subsequent breach are adequately summarized by Plaintiff in its Motion. *See* ECF No. 20 at 2-7.

I. **Damages**

Plaintiff requests the following amounts based on the underlying agreements:

| | | |
|---|---|---|
| **Franchise License Agreement:** | Fees and Interest: | **$470,343.32**[1] |
| | Liquidated Damages: | **$1,825,000.00** |
| **PIP Financing Agreement:** | Principal and Interest: | **$874,310.29**[2] |
| **Financing Agreement:** | Principal and Interest: | **$302,465.82**[3] |
| **Key Money Promissory Note:** | Principal and Interest: | **$152,337.00**[4] |
| | **TOTAL**: | **$3,624,456.43** |

ECF Nos. 20 at 2; 26 at 2 (clarifying amount for Key Money Promissory Note).

In support of the claim for liquidated damages, Plaintiff explains that the Franchise License Agreement provided that, upon termination, Century-Omaha was obligated to pay as liquidated damages a termination fee determined by multiplying the number of rooms in the hotel by $5,000. ECF No. 20 at 16. The

---

[1] *See* ECF No. 22-16 at 2.

[2] *See* ECF No. 22-17 at 3.

[3] *See* ECF No. 22-17 at 4.

[4] *See* ECF No. 26-1 at 6. Plaintiff originally requested $150,802.69, ECF No. 20 at 2, but Plaintiff has since clarified the amount was based on a miscalculation. ECF No. 26 at 2.

Franchise License Agreement provided for 365 guest rooms, which amounts to $1,825,000.00 when multiplied by the per room liquidated damages. Plaintiff is entitled to judgment for these damages. *See* 46 Am.Jur.2d Judgments § 313 ("As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing; that rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation.").

In support of the claim for the non-liquidated damages, Plaintiff submitted two declarations from Angie McPetrie, Vice President, Business Development and Retention, at Red Lion Hotels which included a breakdown of the amount owed for the Franchise Licensing Agreement, the PIP Financing Agreement, the Financing Agreement, and the Key Money Promissory Note. *See* ECF Nos. 22-16; 22-17; 26. The information provided in these documents is sufficient to establish Plaintiff is entitled to a Default Judgment in the amount of **$3,624,456.43**.

II. **Attorney Fees**

In Washington a "trial court may award attorney fees when authorized 'by contract, statute, or a recognized ground in equity.'" *Berryman v. Metcalf*, 177 Wash. App. 644, 656 (2013) (quoting *Cosmo. Eng'g Grp., Inc. v. Ondeo Degremont, Inc.,* 159 Wash.2d 292, 296 (2006)). However, an award of fees "must comply with the ethical rules for attorneys, including the general rule that a

lawyer shall not charge an unreasonable fee." *Id.* at 660 (citing Wash. RPC 1.5). "The burden of demonstrating that a fee is reasonable is upon the fee applicant." *Id.* at 657. "An appellate court will uphold an attorney fee award unless it finds the trial court manifestly abused its discretion." *Id.* at 656-57. "Discretion is abused when the trial court exercises it on untenable grounds or for untenable reasons." *Id.* at 657.

"A determination of reasonable attorney fees begins with a calculation of the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "In principle, [the lodestar] is grounded specifically in the market value of the property in question—the lawyer's services." *Scott Fetzer Co. v. Weeks*, 122 Wash. 2d 141, 150 (1993) (quoting Dan B. Dobbs, *Awarding Attorney Fees Against Adversaries: Introducing the Problem,* 1986 Duke L.J. 435, 467 (1986)).

"The 'lodestar' is only the starting point, and the fee thus calculated is not necessarily a 'reasonable' fee." *Berryman*, 177 Wash. App. at 660. "Although the foundation of the award is built upon objective criteria, adjustments to the award are permitted to account for a number of subjective factors[.]" *Scott Fetzer Co.*, 122 Wash. 2d at 150. "The burden of justifying any deviation from the lodestar rests on the party proposing it." *Berryman*, 177 Wash. App. at 666. "Adjustments to the lodestar are considered under two broad categories: the contingent nature of

success and the quality of work performed." *Id.* Other factors include the difficulty of the questions involved, the skill required, the amount involved, the benefit resulting to the client, and the character of the employment. *Scott Fetzer Co.*, 122 Wash. 2d at 150.

Plaintiff requests attorney fees in the amount of $57,591.50 and $1,536.46 in costs. ECF No. 20 at 18. The underlying agreements provide for attorney fees and costs incurred in enforcing Plaintiff's rights, so Plaintiff is entitled to *reasonable* fees and costs. *See* ECF Nos. 22-1 at 10 (Franchise License Agreement § 7(g)); 22-4 at 9 (PIP Security Agreement § 16(a)); 22-9 at 2-3 (Hotel Improvement Financing Agreement Promissory Note § 4); 22-12 at 2-3 (Financing Agreement Promissory Note § 3). As such, the Court must determine the amount of reasonable attorney fees.

In support of the amount requested, Plaintiff included a billing statement and put forward a limited argument about the reasonableness of the fees:

> The total fees and expenses Red Lion requests are reasonable. First, Red Lion has ensured that it is only seeks fees involved with in its efforts to recover from Century-Omaha. Attorney fees and costs associated with Red Lion's claims against Leslie were excluded from Red Lion's fee calculations. Second, Red Lion's attorney rates are reasonable. *See Getty Images (US), Inc. v. Virtual Clinics*, 2014 WL 1744522, at *3 (W.D. Wash. Apr. 29, 2014). Third, the hours that Red Lion's attorneys spent pursuing this litigation are reasonable, especially in light of the **$3,622,922.12** it seeks to recover through this motion. The Court should therefore award Red Lion $57,491.50 in attorney fees and $1,536.46 in costs pursuant to the parties' contracts.

ORDER GRANTING DEFAULT JUDGMENT IN PART ~ 7

ECF No. 20 at 20 (emphasis in original). After prompting from the Court, *see* ECF No. 25, Plaintiff's counsel submitted affidavits detailing the experience of the attorneys, ECF Nos. 27; 28; 29, along with a reasonable attorney's fee matrix, ECF No. 29-1; 29-2, and supplemental explanations for the time billed, ECF No. 29-3.

The Court will address the reasonable hourly rate before addressing the hours reasonably expended given the number of hours reasonably expended will depend on the reasonable hourly rate. *See Bowers v. Transamerica Title Ins. Co.*, 100 Wash. 2d 581, 600 (1983) ("The attorney's efficiency, his ability to produce results in the minimum time, is a factor which will be reflected by the reasonable hourly rate. It is therefore unnecessary to consider the attorney's efficiency in determining the number of hours reasonably expended on the case.").

A. **Reasonable Hourly Rate**

"[T]he attorney's reasonable hourly rate encompasses the attorney's efficiency, or 'ability to produce results in the minimum time.'" *Berryman*, 177 Wash. App. at 656 (quoting *Bowers,* 100 Wash. 2d at 600). "The reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation." *Bowers*, 100 Wash. 2d at 597. "The presumptive reasonable hourly rate for an attorney is the rate the attorney charges." *Broyles v. Thurston Cty.*, 147 Wash. App. 409, 446 (2008). However, "if the court finds the hourly rate is 'too high' or excessive, the

court may reduce the hourly charge." *Boeing Co. v. Sierracin Corp.*, 108 Wash. 2d 38, 65 (1987)

The rate commonly charged locally is "just one factor in determining the reasonableness of the fee." *Crest Inc. v. Costco Wholesale Corp.*, 128 Wash. App. 760, 774 (2005). The geographic area for purposes of determining a reasonable hourly rate is the immediate local unless the party seeking fees demonstrates that it would be difficult to find law firms in that local with the capability and capacity to handle the case presented. *See Broyles*, 147 Wash. App. at 447.

> Other factors include: the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly and the terms of the fee agreement between the lawyer and the client. Additional factors include the amount involved in the matter and the results obtained, the nature and length of the professional relationship with the client, and the experience, reputation, and ability of the lawyers performing the service.

*Crest Inc., 128 Wash. App.* at 776, n.17 (citing Wash. RPC 1.5(a)). Also relevant are the "time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." *Bowers*, 100 Wash. 2d at 597.

Plaintiff's counsel seeks: (1) **$625** per hour for Mr. LeMaster (Partner); (2) **$585** per hour for Mr. McCullough (Partner); (3) **$370** per hour for Mr. Jordan (Associate); and (4) **$265** per hour for Ms. Honour (Paralagel). Plaintiff acknowledges, however, that based on the justification submitted (USAO

Attorney's Fees Matrix and the Locality Based Comparability Payments, ECF Nos. 29-1, 29-2), the reasonable hourly rates in Spokane would be approximately $500, $430, $300, and $145 per hour respectively. ECF No. 29 at 4. Thus, based on the information submitted by Plaintiff, the Court finds a reasonable hourly rate is: (1) **$500** for Mathew LeMaster with 21 years of experience, (2) **$430** for Hugh McCullough with 14 years of experience, (3) **$300.00** for Jordan Clark with three years of experience, and (4) **$145.00** for Julie Honour. These figures are a result of the Court using the reasonable attorney fee matrix for Spokane. *See* ECF Nos. 29 at 4; 29-1; 29-2. The Court declines to shift these hourly rates upward because there is no showing that qualified attorneys in the Spokane market were unavailable nor were the issues presented particularly complex.

B. **Hours Reasonably Expended**

"The trial court must determine the number of hours reasonably expended in the litigation." *Bowers*, 100 Wash. 2d at 597.

> To this end, the attorneys must provide reasonable documentation of the work performed. This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (*i.e.,* senior partner, associate, etc.). The court must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.

*Id.* "Duplicated effort includes overstaffing." *Berryman*, 177 Wash. App. at 662 (finding matter did not require two attorneys reviewing the same material). "A trial court may reduce the fee because it believes the number of hours billed are excessive or unnecessary[.]" *Boeing Co.*, 108 Wash. 2d at 65. "In fact . . . the trial court should not determine a reasonable attorney fee merely by reference to the number of hours which the law firm representing the prevailing party bills." *Id.* Other factors for determining a reasonable amount of hours expended are the hourly rate, the reasonable amount of time required to present the case, and the type of claims involved, and the complexity or novelty of the issues. *Id.*; *Berryman*, 177 Wash. App. at 662 ("While it is certainly helpful to have two attorneys in court, the defendant is not required to pay for a Cadillac approach to a Chevrolet case."), 663 (billing more than 80 hours related to excluding testimony was excessive since it was not a novel issue). For example, "[t]he rate a firm can charge for complicated, specialized advice (tax planning etc.) has little bearing on the reasonable rate for an antitrust or trade secrets case." *Boeing Co.*, 108 Wash. 2d at 65. "It is also appropriate to discount for unproductive time." *Berryman*, 177 Wash. App. at 663 (hours spent were not recoverable where the matter pursued was "so unlikely to contribute to success in the case at hand.").

Here, Plaintiff has submitted a billing statement from its counsel. The work performed can be segregated into: (1) general work, including pre-suit discussions

regarding Omaha's default and litigation strategy, work related to preserving liens (obtaining UCC lien searches and drafting financing statements), and de-identification of the hotels[5]; and (2) work reasonably performed in drafting (a) the Complaint (ECF No. 1), (b) the Stipulated Motion Extending Time to Respond (ECF No. 5), (c) the Motion for Entry of Default (ECF No. 10), (d) the Stipulated Motion Staying Case (ECF No. 16), (e) the Joint Status Report (ECF No. 17), and (f) the Motion for Default Judgment (ECF No. 20), and corresponding attachments.

According to the Court's calculation, Plaintiff's counsel billed **2.3** hours for McMaster, **30.6** hours for McCullough, **133.4** hours for Clark, and **5.4** hours for Honour. The Court finds that most of the time billed is justified by the billing statement. However, the Court finds that some of the time billed for material produced in litigation is excessive in light of the nature of the work[6] and the hourly

---

[5] The underlying contracts provided for reasonable "legal fees and other costs and expenses incurred in collecting or enforcing this Promissory Note and/or protecting or enforcing Red Lion's rights under this Promissory Note." *See* ECF No. 22-9 at 2-3. As such, the general work performed in enforcing Red Lion's rights, which includes lien preservation services, is recoverable.

[6] None of the documents filed with the Court involve complex or novel issues, but a relatively large amount of hours were billed for the preparation of such. The

rate charged. The Court finds the reasonable amount of time for work performed is: **2.3** hours for McMaster, **30.6** hours for McCullough, **90** hours for Clark, and **5.4** hours for Honour.

C. **Deviation from Lodestar**

"The burden of justifying any deviation from the lodestar rests on the party proposing it." *Berryman*, 177 Wash. App. at 666. "In Washington, adjustments to

---

Complaint is 13 pages long (excluding the signature page) and includes a relatively detailed, yet straightforward account of the underlying agreements and subsequent defaults, ECF No. 1 at 4-8, followed by mostly boilerplate language, ECF No. 1 at 9-12. The Stipulated Motions (ECF Nos. 5; 17) and the Motion for Entry of Default (ECF No. 10) are basic, two-page motions. The Joint Status Report (ECF No. 17) is six pages long, exclusive of the signature and certificate of service pages, and simply includes general information about the suit and the position of the Parties. The Motion for Default Judgment (ECF No. 20) is 22 pages, but the substance includes a straightforward recital of the underlying facts (mostly drawn from the existing Complaint) and simple application of contract law and the law governing the entry of default judgment. Notably, a substantial amount of time was billed for reviewing financing documents and drafting the default judgment, but it is unclear why such an investment of time was necessary and reasonable.

the lodestar product are reserved for 'rare' occasions." *Id.* at 665 (citations omitted). Indeed, there is a "presumption that 'the lodestar represents a reasonable fee.'" *Id.* at 665-66 (quoting *Chuong Van Pham v. City of Seattle*, 159 Wash.2d 527, 542 (2007)). "Adjustments to the lodestar are considered under two broad categories: the contingent nature of success and the quality of work performed." *Berryman*, 177 Wash. App. at 666 (citation omitted). "The court may consider the factors listed in the Rules of Professional Conduct (RPC) 1.5(a), although these factors are in large part subsumed in the determination of a reasonable fee under the lodestar method. *Id.* (citation omitted).

Plaintiff does not argue for a deviation from the lodestar, although Plaintiff does reference factors that would weigh in favor of a deviation. *See* ECF No. 20 at 19-20. In any event, the Court finds that deviation from the lodestar is not proper. Here, while the case involved a large sum of money and the matter was slightly complex because it involved securing security interests, the efforts were not opposed, and the effort and skill required is accounted for in the hourly rate.

D. **Entry of Judgment on Fewer than All Claims**

Rule 54(b) allows courts to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments [. . .], a district court must

take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (citation omitted). The district court evaluates "such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Id*. at 10. "[O]nce such juridical concerns have been met, the discretionary judgment of the district court should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" *Id*. (citation omitted).

Rule 54(b) has a proper place. The Rule was adopted "specifically to avoid the possible injustice of delaying judgment on a distinctly separate claim pending adjudication of the entire case. . . . The Rule thus aimed to augment, not diminish, appeal opportunity." *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (internal brackets omitted, citing *Gelboim v. Bank of Am. Corp*., 135 S.Ct. 897, 902-03 (2015)). The Ninth Circuit first asks "whether the certified order is sufficiently divisible from the other claims such that the "case would [not] inevitably come back to this court on the same set of facts." *Id*. (citation omitted). The equitable analysis ordinarily "is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a

multiple claims action is ready for appeal." *Id*. (citation omitted). Finally, the appeal must meet the "no just reason for delay" prong of Rule 54(b). *Id*. at 630. An appeal should not be certified if interlocutory review is more likely to cause additional delay than it is to ameliorate delay problems.

Here, the Court has stayed the case only concerning Defendant Leslie, pending arbitration. ECF No. 19. There is no just reason to delay the default judgment pending resolution of the arbitration prong of the case. Accordingly, the Court will enter default judgment pursuant to Fed. R. Civ. P. 54(b). The case is subject to reopening in accordance with the Court's Order at ECF No. 19.

III. **Conclusion**

Plaintiff has demonstrated it is entitled to contract damages in the amount of **$3,624,456.43**, costs in the amount of **$1,536.46**, and attorney fees in the amount of **$45,091.00**,[7] for a total of **$3,671,083.89**.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiff Red Lion's Motion for Default Judgment (ECF No. 20) is **GRANTED IN PART**. Plaintiff is entitled to default judgment in the amount of **$3,671,083.89**.

---

[7] $(2.3 \times \$500) + (30.6 \times \$430) + (100 \times \$300) + (5.4 \times \$145) = \$45,091.00$.

In all other respects, the case remains **STAYED** and is subject to reopening in accordance with the Court's Order at ECF No. 19, pending completion of arbitration.

The District Court Executive is directed to enter this Order, enter judgment for Red Lion Hotels Franchising, Inc. against Century-Omaha Land, LLC., with the applicable statutory interest rate pursuant to 28 U.S.C. § 1961, and furnish copies to the parties.

**DATED** February 19, 2019.



THOMAS O. RICE
Chief United States District Judge